# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MIKKELSEN GRAPHIC ENGINEERING, INC.,**

        **Plaintiff,**

v.                                                                     Case No. 07-C-391

**ZÜND AMERICA, INC.,**
**PETER ALSTEN,**
**PETER KILBURN,**
**STEPHEN LIDDLE,**
**MARC MASI, and**
**DAVID TEBON,**

        **Defendants.**

**ZÜND AMERICA, INC.,**

        **Counterclaimant,**

v.

**MIKKELSEN GRAPHIC ENGINEERING, INC.,**

        **Counter-defendant.**

# DECISION AND ORDER

*Background*

A motion to compel filed by Plaintiff Mikkelsen Graphic Engineering, Inc. ("Mikkelsen"), is the subject of this decision. A thumbnail sketch of the action is helpful to

place the motion in context. Mikkelsen alleges patent infringement claims based on five patents, and state statutory and common law claims against the Defendants, Zünd America, Inc. ("Zünd"), Peter Alsten ("Alsten"), Peter Kilburn ("Kilburn"), Stephen Liddle ("Liddle"), Marc Masi ("Masi"), and David Tebon ("Tebon"), (collectively the "Defendants"). Zünd counterclaims for declaratory judgment of non-infringement of Mikkelsen's patents, declaratory judgment of invalidity and unenforceability of U.S. Patent No. 6,772,661 ("'661 patent"), and common law breach of contract.

On November 1, 2007, this Court entered a stipulated confidentiality order, based on its finding of good cause. The order provides that "only information or documents and things that a party in good faith believes contain or refer to trade secrets or other confidential technical or commercial information, the disclosure of which (to the opposing party) would tend to damage the disclosing party's competitive position may be designated "HIGHLY CONFIDENTIAL AND EXPERTS ONLY." (Stipulation and Order Regarding Confidentiality ¶ 1.) The order defines "CONFIDENTIAL" as "any type or classification of information which contains trade secrets or other confidential research, development, manufacturing, technical, commercial . . . information whose unauthorized disclosure could be prejudicial to the supplying party's interests." (*Id*. at ¶ 1(a).) The order states that "HIGHLY CONFIDENTIAL-ATTORNEYS AND EXPERTS ONLY" . . . shall mean confidential information comprising current and future research, technical information . . . that is regarded by the supplying party as highly competitive and sensitive." (*Id*. at ¶ 1(b).) The

order provides that a receiving party may object to any designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-ATTORNEYS AND EXPERTS ONLY." (*Id*. at ¶ 5.)

*Motion to Compel*

Pursuant to Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure and Civil Local Rules 7.1 and 37.1 (E.D. Wis.), Mikkelsen requests an order compelling the Defendants, particularly Zünd, to fully respond to its September 6, 2007, outstanding document production requests. Mikkelsen asserts that the Defendants have refused to produce copies of vision system software (and related documentation), and have only offered limited access which prevents Mikkelsen from conducting appropriate analysis in connection with its action. Mikkelsen requests "reimbursement" in connection with filing its motion pursuant to Rule 37(a)(4).

Before addressing the issues raised by the motion, the Court directs the parties' attention to Civil Local Rule 37.1 which provides:

> All motions for discovery pursuant to Fed.R.Civ.P. 26 through 37 must be accompanied by a written statement by the movant that, after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord. The statement must also recite the date and time of such conference and the names of all parties participating in it.

*See also*, Fed. R. Civ. P. 37(a)(2). Although Mikkelsen cites Civil Local Rule 37.1, its motion is not accompanied by the required certification. Motions that fail to meet the requirements of Civil L.R. 37.1 are summarily dismissed, although they may be refiled if a party shows compliance with the rules or satisfactorily explains the previous failure to comply. *See United*

3

*States v. Molinaro*, 683 F. Supp. 205, 209 (E.D. Wis. 1988) (addressing Local Rule 6.02 (E.D.Wis.) – prior version of Civil L.R. 37.1). Since the motion is not accompanied by the required certification, the Court would be well within its discretion to deny the motion. However, having reviewed the motion, it is obvious that its denial would be an exercise in formalism. The Court will address the motion, but cautions the parties that strict adherence to the rules will be expected, in the future.

Zünd disputes Mikkelsen's characterization of the motion, stating that it concurs the software is relevant and discoverable, and that it only objects to giving its main competitor unfettered access to the software and that it has offered Mikkelsen two different options for inspection and copying the software. Zünd states that it does not retain older versions of the OptiSCOUT or Touch & Cut software in inventory or archive and it only has current versions that Mikkelsen was informed of earlier, although there may be "some beta versions for internal use only." (Fay Decl. ¶ 11, Ex. F.) Zünd states that it cannot produce what it does not have, and suggested that Mikkelsen could "try" obtaining them by subpoena from Zünd's vendors, Grafitroniks or Eurosystems, or from the customers to whom the systems were sold. (*Id*.)

With respect to the software in its inventory, Zünd states that it has offered on at least two occasions that: (1) counsel for Mikkelsen and an independent third-party expert could evaluate the software under the protective order; i.e., the software would be designated as "Highly Confidential - Attorney's & Expert's Eyes Only;" or, (2) counsel for Mikkelsen, a representative from Mikkelsen and/or an independent expert may evaluate the software at

4

Zünd's offices. (*Id.*) Zünd also indicates that Mikkelsen may utilize both methods, if it wishes. (Defs.' Resp. at 5.) Zünd does not mention the related documentation.

In reply, Mikkelsen asserts that Zünd's "highly confidential" designation of the software is without "meaningful" support. It also states that Zünd has failed to comply with the protective order by withholding the software even with the disputed "highly confidential" designation.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" " Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(1)). While not a discovery case, *American Video Graphics L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005), illustrates that for a software patent infringement case to proceed the party claiming infringement must specify how the systems involved infringe on the patents-in-suit.

Rule 34 of the Federal Rules of Civil Procedure empowers a party to serve requests for production of documents, electronically stored information, and tangible things, or entry onto land for inspection and other purposes. Rule 34(a) states, in pertinent part:

> A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

5

>> (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
>> (B) any designated tangible things.

As conceded by Zünd, the vision system software and related documentation, which is the principal subject of this lawsuit, is relevant and discoverable. Zünd objected to the request for production of the software and related documentation, stating its reasons for objecting and offering two options under which it would produce the materials. *See* Fed. R. Civ. P. 34(b)(2). Under Rule 34(a)(1), a party may only be required to produce items within its possession, custody, or control. *See* 8A Charles Alan Wright, Arthur R, Miller, & Richard L. Marcus, *Federal Practice and Procedure*, § 2210 (2d ed. 1994).

The first option for production of the software to counsel for Mikkelsen and an independent third-party expert offered by Zünd relies upon the November 1, 2007, confidentiality order. Although the parties agreed to the stipulated confidentiality order and the Court found good cause for its issuance, the Court may consider whether "good cause" exists for Zünd's designation of the software as "highly confidential." *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 859 (7th Cir. 1994) (regarding third-party request for modification of confidentiality order); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007)(stating "[w]hen, in large complex cases, courts enter umbrella protective orders, permitting parties to designate in advance a large volume of discovery material as confidential, parties are permitted to challenge that designation, and the burden of establishing

6

that there is good cause to protect the designated materials rests at all times with the party seeking protection").

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Pansy*, 23 F.3d at 786 (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)). In *Pansy*, the court recognized several factors, which are neither mandatory nor exhaustive, that may be considered in evaluating whether "good cause" exists: 1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public. 23 F.3d at 787-91.

> [T]he analysis should always reflect a balancing of private versus public interests - Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it.

7

*Id*. at 789 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 492 (1991)).

In asserting it has established "good cause" for the highly confidential designation, Zünd asserts that it competes with Mikkelsen by marketing and selling vision system products. (*See* Complaint ¶ 25; Answer ¶ 25.) Zünd imports vision systems products from Eurosystems S.á.r.l. ("Eurosystems"), a Luxembourg corporation in the business of manufacturing and selling vision systems software for use with equipment in the graphics industry, under the trademark "OptiSCOUT." (*Id*.) Zünd has an obligation not to disclose the software installation steps, calibration, "know-how" or other technical and confidential information to its customers or to Eurosystem's competitors. (Alsteen Decl. at ¶ 11.)

Zünd also purchases vision systems software from Grafitroniks SA, which developed and sells software under the Touch & Cut trademark. (Dubesset Decl. ¶ 2.) Grafitroniks requires Zünd not to disclose the software installation procedures, its calibration, and certain other technical and confidential information to their eventual cutting systems customers or to Grafitronik's competitors. (*Id*. at ¶ 4.)

Zünd markets its systems to a select class of customers who are visited by Zünd salesman, and Zünd knows purchasers of its equipment "quite well." (Alsteen Decl. ¶ 19). The cost of the software component of the systems ranges from $6,000 to $25,000. (*Id*. at ¶ 3.) A Zünd employee installs and calibrates the software to the customer's specific needs, and Zünd employees provide special training to the customer on the use of the cutting system including the vision software. (*Id*. at ¶ 20.) The customer is granted a license which limits the

8

use of the software to that customer as the licensee. (*Id.* at ¶ 21.) Additionally, the customer is provided with a safety pass-key or dongle (a small hand-held electronic device holding an encrypted password) which is needed to operate the software. (*Id.* at ¶ 22.) The customer has access to the software interface, but does not have access to source code algorithms or calibration levels. (*Id.* at ¶ 23.) Zünd does not sell its products through retailers and would never sell its cutting systems or software component to Mikkelsen. (*Id.* at ¶ 24.) Alsteen believes that the software Mikkelsen has requested contains technical and commercial information the disclosure of which to Mikkelsen would tend to damage Zünd's competitive position in the marketplace. (*Id.*) Zünd's business operating methods include not sharing technical information, know-how, modifications, features, improvements or other information especially with respect to its products with its competitors, especially Mikkelsen. (*Id.* at ¶ 16.) Alsteen believes that Mikkelsen would gain an unfair market advantage if given copies of the software to analyze and compare features to its own i–cut system. (*Id.* at ¶ 25.)

Zünd's showing falls short of establishing good cause for its designation of the software as "highly confidential" or "confidential" under the protective order. The requested disclosure relates to private interests. *Pansy*, 23 F.3d at 788. The software is not sold in retail stores, would not be sold to Mikkelsen by Zünd, and is costly with its pricing ranging from $6,000 to $25,000. Mikkelsen is legitimately seeking the information to prosecute its patent infringement claims. *Id.* at 787. To the extent that Zünd's submissions adequately establish its obligation to Eurosystems and Grafitroniks to maintain confidentiality of their software installation procedures and calibration, know-how, or other technical software, Mikkelsen

9

explicitly states that it does not seek that information. (Reply Br. 3, 6.) Additionally, Alsteen's non-specific statement that he believes that Mikkelsen would gain an unfair market advantage if given copies of the software to analyze and compare features to its own i–cut system is insufficient to make the particular and specific demonstration of fact that is required to establish "good cause."

With respect to the second option offered by Zünd – inspection and testing of the software in its offices, Zünd relies upon *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004). Production of documents, not the production of tangible objects, was addressed in *Hagemeyer*, and the decision does not provide authority for the propriety of Zünd's second option for production of the software.

In light of the foregoing, Zünd must produce copies of any software within its possession, control or custody no later than March 14, 2008. Whether Mikkelson wants "the software and related documentation" or only the "software," is not entirely clear. (*Compare* Reply Br. at 3 ("The software and related documentation is all that is sought by this motion") and at 6 ("the only thing it is seeking through this motion is the requested software." ) However, given that Mikkelsen requested both in its opening motion and proposed order, the Court will require that Zünd produce both the software and related documentation to Mikkelsen. At the termination of this litigation, Mikkelsen must either return all software and related documentation to counsel for Zünd or destroy those materials. Direction as to the preferred disposition must be obtained from counsel for Zünd. (*See* Reply Br. 3 (stating "at

10
Case 2:07-cv-00391-LA Filed 03/07/08 Page 10 of 12 Document 42

the termination of this lawsuit the requested software will be returned to counsel for Zünd or destroyed in keeping with the protective order").)

Mikkelsen's motion includes a request for an order directing the Defendants to fully and completely respond to its entire September 6, 2007, request for production without objection. However, Mikkelsen's motion has not provided any specifics with respect to any aspect of its request for production other than limited information regarding the request for software and related documentation. Therefore, that aspect of Mikkelsen's motion to compel is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Mikkelsen's motion to compel (Docket No. 29) is **GRANTED** with respect to its request that Zünd must provide to Mikkelsen any versions of the software sought, within its possession, custody, or control, and related documentation **on or before March 14, 2008**, and the motion is **DENIED** as to Mikkelsen's request for an order directing the Defendants to fully and completely respond to its September 6, 2007, request for production.

At the termination of this litigation, Mikkelsen **MUST** either return all software and related documentation to counsel for Zünd or destroy those materials. Direction as to the preferred disposition **MUST** be obtained from counsel for Zünd.

Dated at Milwaukee, Wisconsin this 7th day of March, 2008.

**BY THE COURT**


s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**